IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

**CLARENCE ENOCHS,**
                    **Plaintiff,**

-vs-                                                                Case No. A-09-CA-054-SS

**LAMPASAS COUNTY,**
                    **Defendant.**
_____

## O R D E R

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Defendant Lampasas County ("Defendant")'s Motion for Summary Judgment [#24], Plaintiff Clarence Enoch ("Plaintiff")'s response thereto [#32], and Defendant's reply [#38]; Plaintiff's motion to strike Defendant's summary judgment evidence [#30], Defendant's response thereto [#35], [#36]; Plaintiff's motion for a hearing regarding the motion for summary judgment [#34], and Defendant's Second Motion for Summary Judgment [#40] and Plaintiff's response thereto [#42]. As an initial matter, because the Court held a hearing on the summary judgment motions on November 17, 2009, Plaintiff's motion for a hearing [#34] is DISMISSED as moot. Thereafter, having reviewed the aforementioned documents, the applicable law, and the case file as a whole, the Court enters the following opinion and orders.

### BACKGROUND

Plaintiff originally filed this case on December 29, 2008 in the 27th Judicial District Court, Lampasas County, Texas. *See* Orig. Pet [#4]. The case was removed to this Court on January 26, 2009. In April 2009, Plaintiff filed an Amended Complaint, in which he asserts the following state

-1-

law claims against Defendant: (1) a Whistleblower claim under Chapter 554 of the Texas Government Code; (2) a claim based on a violation of Chapter 614 of the Texas Government Code; and (3) a defamation claim.

The facts of this case are essentially as follows. Plaintiff was formerly a deputy sheriff with the Lampasas County Sheriff's Department (the "Sheriff's Department"). Plaintiff was investigating a domestic disturbance on June 26, 2007 (the "June 26 incident"), when the victim told him she had dealt with one of Plaintiff's fellow deputies, Deputy Logsdon, the day before, as she had brought a similar complaint of domestic disturbance to him. Am. Compl. at 3. Plaintiff discovered Deputy Logsdon had not filed a report of that incident, had not given the incident a cause number, had not photographed the woman's injuries, and had not notified her of her right to have a protective order. *Id*. Deputy Logsdon had simply given the woman a personal business card for his massage business and told her to come and get a massage. *Id*.

Plaintiff reported this information to his Sergeant, and detailed Deputy Logsdon's wrongdoing in his own written report on the June 26 incident. On the morning of June 27, 2007, Plaintiff alleges Deputy Logsdon spent "numerous hours" in Sheriff Gordon Morris' office. *Id*. at 5. Afterwards, Plaintiff was notified Sheriff Morris wanted to talk with him. Without advance notice, Plaintiff was told he was being terminated. *Id*. at 6. When he asked why, he was told he was "disruptive," and a liar and a thief, and that he would receive further explanation in writing. *Id*. The Sheriff apparently never gave him an explanation in writing. *Id*. However, the Sheriff was required by statute to submit an "F-5" report to the Texas Commission on Law Enforcement Officers and Standards ("TCLEOSE") concerning the discharge, and he did so in July of 2007. The Sheriff classified the termination as "Dishonorable Discharge: Commission of a Criminal Offense," without providing further details. *Id*.

Plaintiff was not sent a copy of the F-5, but saw it in February of 2009 after his counsel requested his personnel file from the Sheriff's Department. *Id.* at 7. Plaintiff thereafter filed a petition for correction of the F-5 report, as he was not aware of any criminal offense he had committed, and Defendant offered to change it to "General Discharge-Termination for an Administrative Violation," which is what it now reads. *Id.* The issue is pending at the State Office of Administrative Hearings. *Id.*

The present lawsuit arises out of Plaintiff's termination. He claims because the termination occurred after he in reported "violations of the law" by one of his fellow deputies that took place on June 26, 2007, it constituted unlawful retaliation under the Whistleblower Act. *See* Am. Compl. at 7-8. He also claims, in the alternative, "to the extent the Defendant argues Plaintiff was terminated due to any complaint filed against him," his rights were violated under § 614 of the Texas Government Code because he was never given a signed copy of any complaint against him. *Id.* at 8-9. Finally, he brings a defamation claim arising out of the fact Sheriff Morris filed an F-5 Report of Separation upon Plaintiff's termination, which he provided to TCLEOSE, indicating Plaintiff was dishonorably discharged for a "criminal offense." *Id.* at 9-11. Plaintiff claims the F-5 report was published to third-party potential employers (due to its filing with TCLEOSE), was viewed by those potential employers, and injured his reputation. *Id.*

Defendant has filed two motions for summary judgment in which it argues: (1) the Whistleblower claim is time-barred; (2) the Whistleblower claim is improper because Plaintiff did not report a "violation of the law"; (3) Plaintiff does not have a cognizable claim under TEX. GOV. CODE § 614; and (4) Plaintiff's defamation claim is barred by sovereign immunity and the statute of limitations.

**ANALYSIS**

I.  **Summary Judgment Standard**

Summary judgment may be granted if the moving party shows there is no genuine issue of material fact, and it is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). In deciding summary judgment, the Court construes all facts and inferences in the light most favorable to the nonmoving party. *Richter v. Merchs. Fast Motor Lines, Inc.*, 83 F.3d 96, 98 (5th Cir. 1996). The standard for determining whether to grant summary judgment "is not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the nonmoving party based upon the record evidence before the court." *James v. Sadler*, 909 F.2d 834, 837 (5th Cir. 1990).

Both parties bear burdens of production in the summary judgment process. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The moving party has the initial burden of showing there is no genuine issue of any material fact and judgment should be entered as a matter of law. FED. R. CIV. P. 56(c); *Celotex*, 477 U.S. at 322–23; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). The nonmoving party must then come forward with competent evidentiary materials establishing a genuine fact issue for trial, and may not rest upon mere allegations or denials of its pleadings. *Anderson*, 477 U.S. at 256–57; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Neither "conclusory allegations" nor "unsubstantiated assertions" will satisfy the non-movant's burden. *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996).

II. **Whistleblower Claim**

The Court agrees with Defendant the Whistleblower claim is time-barred. The Texas Whistleblower statute provides, "[a] state or local governmental entity may not suspend or terminate the employment of, or take other adverse personnel action against, a public employee who in good

faith reports a violation of law by the employing governmental entity or another public employee to an appropriate law enforcement authority." TEX. GOV. CODE § 554.002(a). A public employee who seeks relief under the Whistleblower Act must sue no later than 90 days after the date on which the alleged violation occurred, or was discovered by the employee through reasonable diligence. *Id.* § 554.005. The time used by the employee in acting under grievance or appeal procedures is generally excluded from this limitation period.[1] *Id.* § 554.006.

In the present case, Plaintiff's termination date was undisputedly June 27, 2007; thus, his suit should have been filed no later than September 25, 2007. But it was not actually filed until December of 2008—more than a year and a half after Plaintiff was fired. Plaintiff correctly notes the relevant act for limitations purposes is the date upon which the plaintiff "discovered, through reasonable diligence, that he was terminated for whistleblowing, if that discovery occurred after the actual date of termination." *Texas A & M Univ. at Corpus Christi v. Hamann*, 3 S.W.3d 215, 218 (Tex.App.–Corpus Christi,1999). He claims he did not know he was terminated for whistleblowing prior to October 2008 because he was not provided any "specific details" about his firing. He claims it was not until October of 2008 that he learned the written incident report he made regarding the June 26 incident had been altered to delete the reference to Deputy Logsdon's alleged misconduct, and it was with this discovery that he finally understand why he had been fired.

However, this allegation—which is not supported by the facts of the case as Plaintiff alleges

---

[1] In the present case, Plaintiff filed a letter attempting to invoke the grievance procedures of the Sheriff's Department in October 2008, shortly before he filed this case. The Court assumes this was a proper attempt to invoke the grievance procedures. Defendant claims, however, that Plaintiff did not timely invoke the grievance procedures. Section 554.006(b) requires the grievance procedures to be instituted not later than 90 days after the alleged violation of the Whistleblower Act "occurred" or "was discovered by the employee by reasonable diligence." Thus, whether Plaintiff did or did not timely invoke the procedures depends on whether he reasonably knew the basis for his Whistleblower claim on the date he was terminated, which is the same issue on which the rest of the statute of limitations question turns. Accordingly, the Court does not consider the timeliness of Plaintiff's filing of the grievance procedures separately, but decides it along with the rest of the statute of limitations issue.

them—is not enough to show October 2008 (more than a year after Plaintiff's termination) is the date on which he "discovered" the violation "through reasonable diligence." Based on his own Amended Complaint, Plaintiff knew at the time he was fired (or shortly thereafter): (1) he had made a report the day before regarding Deputy Logsdon's allegedly illegal activity; (2) Deputy Logsdon had been talking with the Sheriff that morning for "numerous hours", (3) the Sheriff would not give Plaintiff a satisfactory reason for his termination, instead calling him a "liar" and telling him he was disruptive; and (4) there was no other conceivable basis for Plaintiff's termination, or for the Sheriff to call him a liar or disruptive, as Plaintiff had never been disciplined for any matter and had "consistently received strong praise and approval for his work." *See* Am. Compl. at 6. These circumstances, taken together, were more than sufficient to put Plaintiff on notice of a possible Whistleblower claim if he truly believed he was terminated for whistleblowing in connection with the June 26 incident.

The only thing that changed in October 2008, even according to Plaintiff, was that he saw the reference he made to Deputy Logsdon had been deleted from the incident report he filed about the June 26 incident. This is hardly evidence of an improper termination based on retaliation; in fact, it did not add anything Plaintiff did not already know or could have reasonably discovered about his termination. In Sheriff Morris's deposition (filed by Plaintiff), Morris specifically testified a complaint about another officer's conduct does not fit in an incident report if it does not have anything to do with the underlying incident. Morris Depo. at 85-86. He testified the information about Deputy Logsdon had nothing to do with resolving the domestic assault at issue in the report, and thus was inappropriate to include in the report. *Id.* at 86. Therefore, Plaintiff is not able to avoid the limitations period simply by making the implausible and unsubstantiated claim he suddenly suspected for the first time his termination may have been in retaliation for his "whistleblowing"

activity simply because he noticed the incident report had been redacted and no longer included information about the conduct of Deputy Logsdon. Deputy Logsdon's conduct undisputedly was not relevant to the domestic assault incident that was the subject of the report in question. The Court finds it abundantly clear Plaintiff had more than enough information at the time of his termination (or shortly thereafter) to form the basis of his Whistleblower claim. His claim he could not have reasonably known the basis for the claim until he saw the redacted incident report in October 2008 is in direct conflict with all the other facts in this case, and defies common sense. He knew all of the relevant facts giving rise to the Whistleblower claim immediately or shortly after he was terminated and, under the express terms of the Whistleblower Act, the limitations period began at that time. Crediting all the favorable evidence reasonable jurors could believe and disregarding all contrary evidence except that which they could not ignore, the Court finds the record simply does not contain any evidence to support Plaintiff's claim he did not discover the alleged Whistleblower violation until October of 2008.

Of course, it is possible Plaintiff sincerely believes he did not discover the Whistleblower violation until October 2008. But the Whistleblower Act mandates an employee must bring suit "not later than the 90th day after the date on which the alleged violation...was *discovered by the employee through reasonable diligence*." Tex. Gov. Code § 554.005 (emphasis added). Plaintiff did not use reasonable diligence (or anything close to it) in investigating his claim. As an excuse for his inactivity, Plaintiff claims he was waiting for a written statement from the Sheriff regarding the reasons for his termination, which he never received. But the written F-5 report filed by the Sheriff with TCLEOSE, which must by law be filed and state the reason for the termination, is a matter of public record. Thus, Plaintiff could have requested and received it as soon as it was filed in July of 2007. At the hearing, Plaintiff's counsel admitted Plaintiff is an experienced law enforcement officer

who was aware the Sheriff was required by statute to file a written report with TCLEOSE, and that the report was therefore available to Plaintiff. The F-5, had Plaintiff requested it, would have confirmed what he already knew: that the Sheriff (in Plaintiff's eyes) did not have adequate reasons for his termination, and was accusing Plaintiff of misconduct Plaintiff did not believe he had committed.

Courts have long recognized discovery of a whistleblower violation is not delayed until the time an employee *confirms* his belief his employer retaliated against him. *See Univ. of Houston v. Barth*, 265 S.W.3d 607, 613 (Tex. App.–Houston [1st Dist.] 2008) (citing cases). Evidence Plaintiff discovered (in October 2008) part of his report on the June 26 incident had been deleted is not evidence he did not discover the Whistleblower violation until October 2008, nor is it evidence he could not have discovered the claim through reasonable diligence. At most, it is evidence he received some slight piece of information that confirmed what he had long known about the alleged violation, but had failed to act upon.

Thus, because Plaintiff did not bring suit on his Whistleblower claim within 90 days after the date on which the alleged violation occurred or was discovered by him through reasonable diligence, the statute of limitations set forth in Texas Government Code § 554.005 properly bars his claim. Defendant's motion for summary judgment is GRANTED on this ground.[2]

### III. Chapter 614 Claim

In his Amended Complaint, Plaintiff claims "to the extent the Defendant argues Plaintiff was terminated due to any complaint filed against him," his rights were violated under § 614 of the Texas

---

[2] Defendant also claims Plaintiff did not in good faith report a "violation of the law," as is required for a Whistleblower claim. But because the Whistleblower claim is barred by the applicable statute of limitations, the Court does not consider this additional argument.

Government Code, as he was never given a signed copy of any complaint against him. Am. Compl. at 8-9. He expressly brings this claim "***in the alternative***" to the Whistleblower claim. *See* Am. Compl. at 8 (emphasis added). Defendant states in its pleadings (and also stated in open court at the hearing) it does not take the position Plaintiff's termination was based on any citizen complaint, and therefore there is no basis for the Chapter 614 claim. Based on this representation, which is not uncontradicted, the Court finds summary judgment should be GRANTED on this ground.

## IV. Defamation Claim

Plaintiff's defamation claim in this case arises from the publication of the statement in the initial F-5 that he was terminated for committing a crime. The F-5 was undisputedly submitted to TCLEOSE by Sheriff Morris on July 12, 2007, although Plaintiff allegedly did not see it until February of 2008, when his lawyer obtained a copy.

Defendant argues summary judgment is appropriate on Plaintiff's defamation claim because defamation is an intentional tort, and thus there is no waiver of sovereign immunity under the Texas Tort Claims Act ("TTCA") for a defamation claim against the Defendant (a governmental entity). *See* Def.'s 2nd Mot. Summ. J. [#40]. Defendant is correct intentional torts, such as defamation, do not fall within the scope of the waiver of immunity under the TTCA. *See* TEX. CIV. PRAC. & REM. CODE § 101.057(2); *City of Hempstead v. Kmiec*, 902 S.W.2d 118, 122 (Tex. App.–Houston [1 Dist.], no writ). Accordingly, Defendant has sovereign immunity with respect to the defamation claim and the claim should be dismissed with prejudice, unless Plaintiff can show it fits within one of the three areas in the Act in which sovereign immunity is waived: use of publicly owned vehicles, premises defects, and injuries arising from conditions or use of property. TEX. CIV. PRAC. & REM.CODE § 101.021. Plaintiff expressly admits none of these areas is applicable to the present case. *See* Pl.'s Resp. [#42] at 4.

However, Plaintiff argues as a reason to avoid summary judgment that "Plaintiff has never pled or alleged that the TTCA applies in this case." *Id.* (emphasis in original). Plaintiff claims there is a different waiver of sovereign immunity which applies to its defamation claim, and is applicable only when a law enforcement agency prepares an F-5 report in bad faith and the plaintiff suffers damages as a result. *Id.* The statute in question is Texas Occupation Code § 1701.456(b), which provides in relevant part, "A law enforcement agency, agency head, or other law enforcement official is not liable for civil damages for a report made by that agency or person if the report is made in good faith." Plaintiff claims the statute's language also means the inverse true: that if a report is made in ***bad*** faith, the law enforcement agency, agency head, or other law enforcement official may be liable for civil damages.

This strained argument is without merit. First, the obvious purpose of the statute in question is to provide an immunity defense for law enforcement officers or agencies reporting to TCLEOSE, many of whom are not affiliated with a governmental entity and are subject to suit for defamation. The statute does not on its face waive sovereign immunity, and would be a highly esoteric and roundabout means of doing so if such were the intent. It is well-settled a clear and unambiguous legislative waiver of immunity is required before a court will hold sovereign immunity has been waived. *Kerrville State Hosp. v. Hernandez*, 28 S.W.3d 1, 3 (Tex. 2000). Section 1701.456 is not a clear and unambiguous waiver of sovereign immunity, and no other court has ever construed it as such.

Finally, even if the statute could be construed to provide a private cause of action for bad faith filing of F-5 reports, the cause of action would—according to the express terms of the statute—only be appropriate against the "law enforcement agency, agency head, or other law enforcement official" who had filed the F-5 report in bad faith. Plaintiff seems to have forgotten he

-10-

has sued Lampasas County, which fits into none of the foregoing catergories.

For all of the foregoing reasons, the Court finds Defendant, a governmental entity, is entitled to summary judgment on the defamation claim.[3]

## V. Plaintiff's Motion to Strike Evidence

Plaintiff objects to two of the affidavits used in support of Plaintiff's motion for summary judgment, stating the affidavits do not state the facts are within the affiants' personal knowledge and are true and correct. Plaintiff is correct that under Texas law, "an affidavit must positively and unqualifiedly represent the facts as disclosed in the affidavit to be true and within the affiant's personal knowledge; otherwise, the affidavit is legally insufficient." *Teal v. State*, 230 S.W.3d 427, 431 (Tex. App.–San Antonio 2007) (citing *Humphreys v. Caldwell*, 888 S.W.2d 469, 470 (Tex. 1994)).

Plaintiff specifically objects to the affidavits of Gordon Morris and Susie LaFuente (attached to Defendant's motion for summary judgment as Exhibits 1 and 2). Gordon Morris is the Sheriff who terminated Plaintiff's employment, and he testifies in his affidavit the termination took place on June 27, 2007, and he submitted the F-5 report on July 12, 2007. Morris Aff. at ¶ 3. Neither of these facts is disputed. He also testifies Plaintiff did not take any steps to initiate a grievance after his termination. *Id.* at ¶ 4. However, the Court did not take this testimony into account in the foregoing opinion, or rely upon it in any way. Susie LaFuente testifies similarly in her affidavit that Lampasas County did not receive any notice Plaintiff was submitting a grievance concerning his termination. LaFuente Aff. at ¶ 4. Because the Court did not rely on any of the foregoing evidence or consider it in any way, Plaintiff's objections and motion to strike are DISMISSED as moot in their entirety.

---

[3]Defendant argues in the alternative the defamation claim is barred by the applicable statute of limitations. The Court does not reach this issue, as the claim is barred by the doctrine of sovereign immunity.

## CONCLUSION

In accordance with the foregoing,

IT IS ORDERED that Defendant Lampasas County's Motion for Summary Judgment [#24] and Second Motion for Summary Judgment [#40] are GRANTED, in accordance with the foregoing order.

IT IS FURTHER ORDERED that Plaintiff Clarence Enochs' motion for a hearing regarding the motion for summary judgment [#34] is DISMISSED as moot, as the Court has effectively granted the request.

IT IS FINALLY ORDERED that Plaintiff's motion to strike Defendant's summary judgment evidence [#30] is DISMISSED as moot.

SIGNED this the 2nd day of December 2009.

_____
SAM SPARKS
UNITED STATES DISTRICT JUDGE